**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ARISA GROENLEER,
           Appellant,

      v.

DEPARTMENT OF THE NAVY,
          Agency.

DOCKET NUMBER
SF-0752-16-0028-I-2

DATE: May 5, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Daphne Barbee, Esquire, Honolulu, Hawaii, for the appellant.

Kathryn A. Good, Esquire, Quantico, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1     The appellant has filed a petition for review of the initial decision, which sustained her removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    The following facts, as further detailed in the initial decision, are not materially disputed. The appellant held an Intelligence Specialist position with the Naval Criminal Investigative Service from September 2008, until her removal in May 2015. *Groenleer v. Department of the Navy*, MSPB Docket No. SF-0752-16-0028-I-2, Refiled Appeal File (RAF), Tab 67, Initial Decision (ID) at 3. For fiscal years 2010 and 2011, the agency rated her performance as successful. ID at 4. During fiscal year 2012, the agency reassigned her to the Hawaii Field Office and again rated her performance as successful. *Id.* Around the time of that performance appraisal, the appellant received a new first-level supervisor. ID at 5. About 6 months later, in April 2013, this new supervisor issued the appellant a performance advisory letter (PAL), warning of performance deficiencies. *Id.*

¶3    For fiscal year 2013, the first year the appellant was evaluated under new performance standards, the agency rated her performance as minimally successful. *Id.* Thereafter, in November 2013, the appellant's supervisor issued another PAL, once again identifying performance deficiencies, and warning that

she could be placed on a performance improvement period (PIP) if her performance did not improve. ID at 6.

¶4    In January 2014, the agency placed the appellant on a PIP. *Id.* In September 2014, the agency informed the appellant that she failed the PIP. ID at 7. The agency proposed her removal for unacceptable PIP performance in December 2014, and then effectuated her removal in May 2015. ID at 7-8.

¶5    The appellant filed the timely Board appeal that is currently before us, challenging her removal.[2] *Groenleer v. Department of the Navy*, MSPB Docket No. SF-0752-16-0028-I-1, Initial Appeal File (IAF), Tab 1. The administrative judge dismissed the appeal, without prejudice, for refiling at a later date so the appellant's attorney could obtain the interim security clearance necessary for viewing pertinent classified materials and agency classification authorities could finish their document review. IAF, Tab 44. Ultimately, the administrative judge developed the record and held the requested hearing before sustaining the appellant's removal under chapter 75.[3] ID at 3.

¶6    The administrative judge first provided a lengthy discussion of the evidence relevant to the pre-PIP period, ID at 12-20, and the PIP period, ID at 20-30. Next, he found that although it was not required in this chapter 75 removal, the agency provided the appellant with a reasonable opportunity to improve. ID at 30-32. For the agency's lone charge of "unacceptable performance during

---

[2] An administrative judge dismissed a prior Board appeal challenging her removal as premature because the appellant had a pending equal employment opportunity (EEO) complaint. *See Groenleer v. Department of the Navy*, MSPB Docket No. SF-0432-15-0582-I-1, Initial Appeal File, Tab 11.

[3] We note that the administrative judge sealed portions of the record and held portions of the hearing in a classified setting, to accommodate security and classification requirements. *E.g.*, IAF, Tab 28 at 4; ID at 2. After completing his initial decision, the administrative judge had it screened by a security manager for the respondent agency to ensure it does not contain classified or otherwise sensitive materials. ID at 3 n.2. Although the portions of the record containing classified and Special Access Program material are available at a secure location, we did not find reviewing them necessary to render the instant decision.

opportunity to improve performance period," the administrative judge sustained the first specification, ID at 32-60, but not the second or third, ID at 60-61. He then denied each of the appellant's affirmative defenses. He found no merit to the claim that her March 2013 grievance was protected under Title VII. ID at 63-70. The administrative judge also found that while the appellant did engage in some protected equal employment opportunity (EEO) activity, she failed to establish that it was a motivating factor in her removal. ID at 70-75. He further found that the appellant failed to establish race or sex discrimination, ID at 76-84, or any due process violation, ID at 84-87. Finally, the administrative judge found that the agency established the requisite nexus, ID at 11-12, and removal was a reasonable penalty, ID at 87-93.

¶7       The appellant has filed a petition for review. *Groenleer v. Department of the Navy*, MSPB Docket No. SF-0752-16-0028-I-2, Petition for Review (PFR) File, Tab 1. The agency has filed a response, and the appellant has replied.[4] PFR File, Tabs 5-6.[5]

---

[4] In her petition, the appellant included a lengthy statement of facts that is filled with assertions in support of her position. PFR File, Tab 1 at 5-15. For example, without identifying any evidentiary support, the statement of facts asserts that the appellant began to experience a hostile work environment after her reassignment to the Hawaii Field Office and a new supervisor. *Id.* at 5. In her reply brief, the appellant asserts that we should deem her statement of facts true because the agency did not explicitly refute it. PFR File, Tab 6 at 4. We disagree. *See Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995) (recognizing that the statements of a party's representative in a pleading do not constitute evidence).

[5] The appellant also requested permission to submit another pleading that would address *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021) and *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16, because those decisions were issued after the appellant filed her petition for review but while that petition was pending before the Board. PFR File, Tab 8. This request is denied. *Santos* and *Lee* do not require a different result because they involved the standards for a chapter 43 appeal, while this appeal is governed by the standards of chapter 75. *E.g.*, RAF, Tab 8 at 8, 50-52, Tab 44 at 8-9, Tab 49 at 11, 15-16; ID at 3, 9 n.7.

## ANALYSIS

<u>The appellant has failed to establish that the administrative judge committed any procedural error in adjudicating this appeal.</u>

*Deposition*

¶8    During the adjudication of this appeal, the agency deposed the appellant over 2 days in a secure facility. RAF, Tab 57 at 10. In the middle of the first day, the parties separately emailed the administrative judge about a dispute. Agency counsel asked the administrative judge to hold a call with all relevant parties, because the appellant was refusing to answer some questions and left for an hour, shortly after the deposition started. *Id.* Appellant's counsel disagreed with that characterization. *Id.* at 11. Among other things, appellant's counsel alleged that she and the appellant had simply attempted to leave for lunch, but agency counsel "attempted to illegally kidnap" them by blocking their exit. *Id.* Appellant's counsel requested a protective order and both parties requested sanctions against their counterpart. *E.g.*, RAF, Tabs 63-65. The administrative judge denied the motions, finding that the agency did not engage in any wrongful conduct and the appellant's claim of attempted kidnapping was hyperbolic. ID at 8 n.6.

¶9    On review, the appellant has raised this matter again. PFR File, Tab 1 at 31-33. She argues that the administrative judge abused his discretion in denying her request for a protective order or sanctions and finding no fault in the behavior of agency counsel at the deposition. *Id.* at 32-33. According to appellant's counsel her use of the term "kidnapping" was not hyperbolic. *Id.* at 33.

¶10    While appellant's counsel would have us believe that she and the appellant were nearly kidnapped, the record is not at all supportive. The agency presented declarations under penalty of perjury from several witnesses, each disputing the claim. RAF, Tab 63 at 6-11. Those declarations generally describe the parties disagreeing about lunch scheduling, but the appellant and her representative

leaving when they wanted, with the escort necessitated by the deposition location—a secure facility. *Id.* Not even the declaration of the appellant genuinely corroborates the claim of an attempted kidnapping; it instead suggests the parties had a contentious disagreement about scheduling, which ended when the appellant and her representative simply walked past agency counsel and out the door. RAF, Tab 64 at 10-11. The parties appear to agree that, after the lunch break, they finished out that deposition day and another, with some guidance by the administrative judge and without further incident. *E.g.*, RAF, Tab 63 at 6-7; PFR File, Tab 1 at 32.

¶11    In her petition, appellant's counsel also suggests that the aforementioned email from agency counsel to the administrative judge was an improper ex parte communication. *E.g.*, PFR File, Tab 1 at 31-32; RAF, Tab 57 at 10-11. But we find nothing improper about the email, which involved scheduling a call for all parties to settle a deposition dispute, not the merits of this appeal. *See* 5 C.F.R. § 1201.101 (recognizing that not all ex parte communications are prohibited; only those that involve the merits of the case or otherwise violate rules requiring written submissions are prohibited). Under these circumstances, we find the appellant's arguments surrounding her deposition meritless. *See Pumphrey v. Department of Defense*, 122 M.S.P.R. 186, ¶ 14 (2015) (discussing the limited circumstances in which an administrative judge is authorized to issue a protective order); *Leseman v. Department of the Army*, 122 M.S.P.R. 139, ¶ 6 (2015) (recognizing that the Board will not reverse an administrative judge's determination regarding sanctions absent an abuse of discretion).

*Denied witnesses*

¶12    The appellant next argues that the administrative judge improperly denied several witnesses she requested. PFR File, Tab 1 at 27-28. The record shows that he denied two witnesses because their work with the appellant was too remote in

time and four others because he did not find that their proffered testimony would be helpful. RAF, Tab 50 at 5.

¶13     On review, the appellant reasserts that these witnesses, if permitted to testify, would have established that she was a good worker. PFR File, Tab 1 at 27. However, the record already contained written statements from these witnesses about her past performance. IAF, Tab 8 at 81, 85-86, 90, 95-96. Moreover, the appellant appears to concede that these individuals did not work with her throughout the relevant period—when she was working under the PIP. PFR File, Tab 1 at 27. Therefore, we are not persuaded that the administrative judge abused his discretion in disallowing those witnesses. An administrative judge has broad discretion to control the course of the hearing, including wide discretion to exclude witnesses when it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985).

The administrative judge properly sustained the agency's charge.

¶14     The agency proposed and effectuated the appellant's removal based on a single charge of "unacceptable performance during opportunity to improve performance period," with three underlying specifications. RAF, Tab 49 at 4-10; IAF, Tab 8 at 33-53. In short, each specification concerned a specific performance objective—production, intelligence cycle feedback, and ad hoc. RAF, Tab 49 at 6-8. The administrative judge found that the agency proved specification 1 (production). ID at 33-60. He did not sustain specifications 2 (intelligence cycle feedback) or 3 (ad hoc), because he found that the PIP imposed a higher level of performance than was required by her corresponding performance objectives. ID at 60-61.

¶15     Though further detailed in the proposal and decision letters, the production specification that remains described how the agency assigned the appellant 55 tasks during her PIP, but she failed to satisfactorily complete 80% of them, which was required to be minimally successful. RAF, Tab 49 at 5-7; IAF, Tab 8

at 36.  According to the agency, the appellant satisfactorily completed only 20 of the 55 tasks, or 37% of them.  RAF, Tab 49 at 6-7; IAF, Tab 8 at 36.

¶16    The administrative judge conducted an extensive evaluation of the tasks on which the agency relied.  ID at 33-60.  He found that the agency failed to meet its burden for nine of them, ID at 33-34, but proved that the appellant failed to satisfactorily complete the remaining tasks, ID at 34-60.  Accordingly, the administrative judge concluded that the satisfactory completion rate established by the record was 29 of 55 tasks, or approximately 53%, which was better than alleged but well below the 80% rate required under the PIP to be minimally successful.  ID at 34; IAF, Tab 8 at 290-95.

¶17    On review, the appellant primarily challenges the production specification on the basis of the applicable standards.  PFR File, Tab 1 at 16-21.  According to the appellant, the agency did not provide objective standards, and she was unsure what the agency wanted from her work products.  *Id.* at 16-17.  We are not persuaded by this contention.

¶18    In its January 2014 PIP letter, the agency explained the production requirement at issue by detailing what was necessary for an acceptable rating, what constituted performance deficiencies, and the improvement that was required of the appellant.  IAF, Tab 8 at 276-77.  The agency then sent the appellant to a 3-week refresher training course.  *Id.* at 286, 309.  Immediately after her return, the appellant's chain of command met with her to provide detailed instructions, assignments, and another explanation of what constituted acceptable performance.  *Id.* at 290-92.  In the days that followed, the agency amended the PIP to clarify what was necessary for the appellant to perform acceptably and provided a complete "to do" list.  *Id.* at 290-306.  Among other things, the amended PIP clarified that at least 80% of her work products must be satisfactory, i.e., having no major errors and requiring minimal edits.  *Id.* at 292-93.  The agency also provided relevant definitions.  For example, it defined a work product as requiring minimal edits "if it contains 1) three or less

grammatical errors per page; *and* usually contains 2) most logical headers and context; 3) clear sentence structure throughout the product, *and* 4) graphics that support the text or are explained." *Id.* at 293. Over the subsequent months, throughout the remainder of the PIP, the appellant's first- and second-level supervisors repeatedly held meetings to provide the appellant feedback and guidance. IAF, Tab 8 at 41 n.4. These facts, among others, demonstrate that there is no merit to the appellant's allegation that her performance standard was impermissibly subjective or left her unsure what the agency wanted. *Cf. Melnick v. Department of Housing and Urban Development*, 42 M.S.P.R. 93, 98-99 (1989) (recognizing, in a chapter 43 appeal, that performance standards may be more or less objective depending upon the job measured; the fact that performance standards may call for a certain amount of subjective judgment from an appellant's supervisor does not necessarily invalidate them), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990).

¶19     Concerning her performance, the appellant also asserts that the agency did not present data about the work products of coworkers, PFR File, Tab 1 at 18-19, but she has failed to identify any requirement that the agency do so and we are aware of none.[6] To the extent that the appellant may be implying that such data

---

[6] The appellant also asserts that the administrative judge erred in denying her motion to compel discovery of her coworker's work products from 2014-2015. PFR File, Tab 1 at 26; IAF, Tab 10 at 14, Tab 11 at 4-5. However, after reviewing the pleadings she referenced, we are unable to locate any argument about that discovery request in her motion to compel or the administrative judge's ruling. *Compare* IAF, Tab 10 at 4-8, 42-48, *with* IAF, Tab 28 at 1-2. The motion did include her exhaustive discovery request, IAF, Tab 10 at 10-33, and that request did seek a coworker's work products, *id.* at 14. Yet the crux of her motion to compel involved the appellant's own work products and the agency's redactions of them. *Id.* at 6-8, 42-48. There appears to be no argument about discovery of her coworker's work products. Moreover, even if the motion to compel did encompass the request for her coworker's work products from 2014-2015, we find no basis for concluding that the agency erred by refusing the request because, inter alia, the materials were classified and the request was overly broad, nor do we find any abuse of discretion on the part of the administrative judge. *See Vaughn v. Department of the Treasury*, 119 M.S.P.R. 605, ¶ 15 (2013) (recognizing an administrative judge's broad discretion in ruling on discovery matters); 5 C.F.R.

was necessary to establish that the agency's standards were reasonable, we disagree. The appellant's bare assertion that the agency should have provided more evidence about her peers does not provide a basis for disturbing the administrative judge's findings about the reasonableness of her performance standards. ID at 35; *see also Graham v. Department of the Air Force*, 46 M.S.P.R. 227, 235 (1990) (recognizing that, in a chapter 75 removal for unacceptable performance such as this, an agency must prove that the performance standards at issue are reasonable and provide for an accurate measurement of the employee's performance).

¶20 The appellant next argues that her chain of command prevented her from contacting others for assistance during the PIP. PFR File, Tab 1 at 20. Yet, based on various pieces of evidence, including the appellant's own admissions, the administrative judge found that the agency offered the appellant two mentors, neither of which the appellant utilized. ID at 26, 29, 31. More importantly, as mentioned above, the appellant's first- and second-level supervisors provided regular feedback discussions during the PIP, including more than 30 instances that are documented in her removal letter, along with regular written feedback and examples. ID at 23-24, 31; IAF, Tab 8 at 41. According to the appellant, these first- and second-level supervisors were hostile throughout the PIP, preventing a meaningful opportunity to improve. PFR File, Tab 1 at 20-21. However, based on witness testimony and documentary evidence, the administrative judge did not find her allegations credible. ID at 31-32. We will not disturb his well-reasoned findings about these matters. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (recognizing that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations

§ 1201.72 (explaining discovery in a Board proceeding, its scope, methods, and limitations).

only when it has "sufficiently sound" reasons for doing so); *see also Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1373 (Fed. Cir. 2016) (recognizing the deference afforded to an administrative judge's demeanor-based credibility determinations, "[e]ven if demeanor is not explicitly discussed").

The administrative judge properly denied the appellant's affirmative defenses.

*Due process*

¶21     The administrative judge considered the appellant's twofold allegation that the agency denied her due process. ID at 84-87. While the appellant generally alleged bias on the part of the deciding official, the administrative judge found no evidence of the same. ID at 85. And while the appellant alleged that she lacked a meaningful opportunity to respond to the proposed removal because the agency heavily redacted and guarded her underlying work products, which were classified, the administrative judge disagreed because the agency made unredacted versions available. ID at 85-87.

¶22     On review, the appellant reasserts a due process violation in several regards. PFR File, Tab 1 at 23-27. First, the appellant presents several arguments that are unavailing because they rely on an oversimplification of pertinent facts. For example, while the appellant argues that she was denied due process because her proposed removal included only redacted work products, *id.* at 23, there is ample evidence that the agency offered her the opportunity to review unredacted versions during the response period and the appellant simply chose not to do so. Instead, the appellant continually asserted that she was being denied due process because of the redactions, while simultaneously refusing the agency's offer to view the documents without redactions. *Compare* IAF, Tab 8 at 66-68 (the appellant's December 2014 response to the proposed removal, referring to the ambiguity caused by redactions in the supportive materials), *with id.* at 101-16 (February 24, 2015 transcript of the appellant's oral response, wherein agency counsel indicated that the appellant could review the unredacted

versions), 176-77 (February 23, 2015 email from agency counsel to the appellant's counsel, indicating that the appellant could review the unredacted versions).

¶23    The appellant has separately alluded to the fact that her counsel was not permitted to review the unredacted documents. PFR File, Tab 1 at 24-25. Again, the record shows that the agency offered to help her apply for an interim security clearance so she would have the necessary authorization, but the appellant's counsel chose not to do so. *Compare* IAF, Tab 8 at 170-73 (March 6, 2015 message from the appellant's counsel, again arguing that the appellant is disadvantaged because of the redactions), *with id.* at 189 (March 6, 2015 response from the agency's counsel, offering to help the appellant's counsel obtain an interim clearance), *and id.* at 205 (March 13, 2015 message from the appellant's counsel characterizing the need for an interim clearance as onerous), *with id.* at 210-12 (March 18, 2015 response from the agency's counsel explaining the need for a clearance), 222-24 (March 30, 2015 message from the appellant's counsel, once more arguing that she was disadvantaged because of the redacted documents). She only applied for her interim security clearance in connection with this appeal many months later. IAF, Tab 38 at 4.

¶24    Next, without identifying any specific work product, the appellant has alluded to the fact that the agency was not able to produce unredacted versions of some documents during adjudication of this appeal, for security reasons, despite the parties' clearances. PFR File, Tab 1 at 25.[7] However, the administrative

---

[7] Within this due process portion of her petition, the appellant appears to dispute the administrative judge's finding of unsatisfactory performance for a single work product. PFR File, Tab 1 at 25 (citing ID at 42). But the argument misstates the administrative judge's findings. The appellant suggests that the administrative judge held her accountable for not including a document with her work product that, in actuality, could not be included due to its classification level. PFR File, Tab 1 at 25. In fact, the administrative judge held her accountable for the fact that the appellant's work product erroneously stated that the document was attached to her work product when it was not. ID at 42-43.

judge acknowledged the same and, as a result, assumed that the appellant completed those tasks satisfactorily. ID at 33-34.

¶25    The appellant's other due process arguments similarly relate to the redaction of her work products. She appears to argue that it was a due process violation or other error for the administrative judge to rely on the unredacted versions of her work products, rather than the redacted work products the deciding official considered. PFR File, Tab 1 at 22, 24. This argument is unavailing because an adverse action appeal from an agency is a de novo proceeding before the Board whereby the Board will consider relevant evidence even if it was not before the agency at the time of its adverse action. *Street v. Department of the Army*, 23 M.S.P.R. 335, 340-41 (1984). In other words, the administrative judge properly considered evidence from both parties that the deciding official lacked, such as the appellant's hearing testimony and her unredacted work products.

¶26    The appellant separately argues that it was a due process violation for the deciding official to rely on the redacted work products. PFR File, Tab 1 at 21-24; IAF, Tab 8 at 33-36. However, the appellant has acknowledged that her proposed removal included those redacted work products. PFR File, Tab 1 at 23. Thus, the deciding official did not consider information that was not made available to the appellant. Moreover, due process requires that an employee being deprived of her property interest be given a meaningful opportunity to respond. *Gajdos v. Department of the Army*, 121 M.S.P.R. 361, ¶ 18 (2014). The appellant has failed to present any persuasive argument that the deciding official's consideration of redacted work products, along with her chain of command's reports of why they were unsatisfactory, precluded a meaningful response. If she had chosen to do so, the appellant could have reviewed the unredacted work products to formulate arguments about why her work was satisfactory, contrary to the charge and her chain of command's evaluations.

*Reprisal for grievance activity*

¶27        Although the appellant claimed that a March 2013 grievance she filed was protected activity under Title VII's opposition clause and the agency's subsequent actions constituted improper reprisal, the administrative judge found otherwise. ID at 63-70.  He concluded that the grievance was not activity protected under the opposition clause of Title VII because the grievance involved general complaints about her manager; it did not oppose discrimination.  *Id.* (referencing *Daniels v. School District of Philadelphia*, 776 F.3d 181, 193-95 (3d Cir. 2015) (recognizing that a complaint about a manager, without relating the complaint to discrimination based on a protected category, is not covered by Title VII's opposition clause)).

¶28        On review, the appellant has raised her March 2013 grievance once more, but her arguments are not persuasive.  The appellant suggests that while she may not have used "magic words," such as "discrimination," she did complain about being singled out and that should suffice.  PFR File, Tab 1 at 28-29; RAF, Tab 44 at 99-100.  We disagree.  While there are no magic words, Title VII's opposition clause only protects an employee's opposition to discrimination.  42 U.S.C. § 2000e-3(a) (making it "an unlawful employment practice for an employer to discriminate against any . . . employee[] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter"); *see Crawford v. Metropolitan Government of Nashville and Davidson County*, 555 U.S. 271, 276-78 (2009) (discussing the term "oppose," in the opposition clause of 42 U.S.C. § 2000e-3(a), and explaining that opposition includes taking "a stand against an employer's discriminatory practices").  The appellant has failed to present any substantive basis for us to conclude that her general complaint about "the management and communication methods" of her supervisor, with no apparent relation to discrimination, falls within those protections.  RAF, Tab 44 at 99-100.

*Reprisal for an EEO complaint*

¶29     The appellant's next reprisal claim concerned an EEO complaint, which was protected activity, but the parties disagreed about its timing in relation to the agency's actions. While the appellant asserted that she initiated her EEO complaint before her first- and second-level supervisors concluded that she failed the PIP, the administrative judge found that her complaint actually occurred days after they issued her PIP failure letter. ID at 70-72; RAF, Tab 46 at 111. He further found that the appellant's EEO complaint was not a motivating factor in the actions that followed, including her removal. ID at 73-75. Alternatively, the administrative judge found that, even if it were a motivating factor, the agency would have removed the appellant even in the absence of her EEO activity. ID at 75.

¶30     On review, the appellant reasserts that she initiated her EEO complaint before the PIP failure letter, not after. PFR File, Tab 1 at 29. However, her bare assertion on this point does not warrant disturbing the administrative judge's well-reasoned findings to the contrary, which were based upon documentary evidence and credibility determinations. ID at 70-72; *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *see also Purifoy*, 838 F.3d at 1373; *Haebe*, 288 F.3d at 1301.

¶31     The appellant's petition goes on to acknowledge, as the administrative judge did, that her EEO complaint did precede the removal action at issue in this appeal. PFR File, Tab 1 at 29-30. Yet she fails to present any substantive and persuasive argument that the EEO complaint was a motivating factor in her removal. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 30-31. According to the appellant, the administrative judge erroneously concluded that her first- and second-level supervisors played no role in her

removal when, in fact, the deciding official relied on their conclusions about her performance during the PIP. PFR File, Tab 1 at 30. But that misconstrues the administrative judge's findings. The administrative judge found that while the appellant's first- and second-level supervisors evaluated the appellant's PIP performance as unacceptable, that evaluation occurred before her EEO complaint and any possible motive to retaliate from those supervisors, and they were not otherwise involved in her subsequent removal. ID at 70-75. The appellant's argument on review does not establish otherwise, nor does it present any other basis for disturbing the administrative judge's findings regarding her EEO reprisal claim.

*Discrimination*

¶32  The final affirmative defense the administrative judge considered was one of discrimination in the form of disparate treatment. Among other things, he considered allegations concerning the appellant and a comparator employee's access to certain classified systems, desk locations, and freedom to collaborate, along with the agency's decision to promote that employee. Ultimately, although the appellant argued that she was subjected to disparate treatment on the basis of race and gender, the administrative judge found that she failed to meet her burden of proof. ID at 76-84.

¶33  On review, the appellant has reasserted discrimination. PFR File, Tab 1 at 28-31. However, her arguments largely consist of conclusory allegations without persuasive argument and evidence that would warrant disturbing the initial decision. For example, the appellant asserts that the administrative judge improperly described her second-level supervisor as married to someone with Asian heritage, when that individual is actually of Polynesian heritage. PFR File, Tab 1 at 28; ID at 77. But even if true, which we have not determined because the appellant failed to identify any evidence about the same, the distinction appears inconsequential. The administrative judge cited this individual's heritage

while making the more general finding that the Hawaii Field Office included a wide variety of people who were or had a close family member who was "one-half minority," like the appellant. ID at 82. Concerning the promotion of the comparator at issue, a Caucasian male, the appellant asserts that the agency selected him for a promotion over a third-party Japanese American even though he had no experience. PFR File, Tab 1 at 30. However, the appellant failed to identify any evidence to support that claim, nor has she identified anything to dispute the agency's explanation for the selection.

¶34    The appellant also attempts to discount testimony from certain officials about the absence of discrimination, arguing that they were not present to witness her first-level supervisor's disparate treatment. PFR File, Tab 1 at 30. Additionally, she argues that the administrative judge erred in finding that several officials involved in the appellant's PIP and subsequent removal were unaware of the fact that she is one-half Japanese because her race is apparent. *Id.* at 28; ID at 77-78, 83. While we have considered each of the appellant's arguments or assertions pertaining to discrimination, we find no basis for disturbing the administrative judge's thorough and well-reasoned findings, which are largely based upon credibility determinations.[8]    ID at 76-84; *see Purifoy*, 838 F.3d at 1373; *Haebe*, 288 F.3d at 1301.

The administrative judge properly found the penalty of removal to be reasonable.

¶35    The administrative judge determined that removal was a reasonable penalty. ID at 87-93. On review, the appellant summarily asserts that the removal should be mitigated because the agency proved only one of the three specifications underlying its charge. PFR File, Tab 1 at 15-16. However, it is well settled that

---

[8] Because we affirm the administrative judge's finding that the appellant failed to show that any prohibited consideration was a motivating factor in the agency's action, we need not resolve the issue of whether the appellant proved that discrimination or retaliation was a "but-for" cause of the agency's decisions. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

proof of one specification is sufficient to sustain a charge. *Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 650 (1996). When an agency's charges are sustained, but some of the underlying specifications are not, its penalty determination is entitled to deference and must be reviewed only to determine whether it is within the parameters of reasonableness. *Id.*

¶36 While the appellant argues that we should reconsider the penalty, she has failed to present any substantive basis for doing so. PFR File, Tab 1 at 15-16. She has not, for example, identified any mitigating factor that the agency should have, but failed to consider. Accordingly, we agree with the administrative judge's thorough discussion of the relevant factors and the deciding official's consideration of the same. ID at 87-93. The deciding official recognized that the appellant's performance deficiencies were very serious because they weakened the agency's ability to meet mission requirements and respond to threats both foreign and domestic, they persisted despite extensive training and guidance, and they resulted in supervisors losing confidence in the appellant. ID at 88-89. He acknowledged mitigating factors, such as the appellant's lengthy career and prior successful performance, but determined that they did not warrant a lesser penalty. ID at 90. We find no basis for reaching a different conclusion, despite the agency's failure to prove some of its specifications.

## NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for
                                     _____
                                     Jennifer Everling
                                     Acting Clerk of the Board
Washington, D.C.